1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KENNETH MAURICE SUTTON,

                              Petitioner,

         v.

JOHN GAY,

                              Respondent.

Case No.  C07-5148RBL-KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**November 16, 2007**

         This habeas corpus action has been referred to the undersigned Magistrate Judge pursuant to

Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrates' Rules MJR 3 and MJR 4.

The petition has been properly filed under 28 U.S.C. § 2254.

<u>FACTS</u>

         Petitioner challenges a 2003 conviction from Pierce County.  Petitioner was found guilty by

jury trial of one count of first degree burglary with a weapons enhancement and one count of second

degree assault with a weapons enhancement.  Petitioner was sentenced to 116 months for the

burglary and 84 months on the assault with those convictions to run concurrently.  He also received a

24-month sentence enhancement for being armed with a deadly weapon on the burglary and a 12-

1   month enhancement for being armed with a deadly weapon on the assault.  The enhancements run

2   consecutive to other sentences.  The total sentence of confinement is 152 months.  (Dkt. # 1, exhibit

3   1).

4           The state court of appeals summarized the facts as follows:

5           On June 25, 2003, the State charged Sutton with burglary in the first degree, for entering the
    hotel room occupied by Karen Ramirez, and assault in the second degree, for striking Ramirez with a
6   beer bottle, both allegedly occurring on March 27, 2003.

7   (Dkt. # 15, Exhibit 5).

8                                PROCEDURAL HISTORY

9           Mr. Sutton appealed his conviction and sentence through counsel.  Counsel raised only one

10  issue on appeal.  That issue was an alleged violation of the state speedy trial rule.  (Dkt. # 15, Exhibit

11  2).

12          Mr. Sutton filed a statement of additional grounds for review on direct appeal.  (Dkt. # 15,

13  Exhibit 4).  Mr. Sutton specifically states he was raising the grounds on both federal and state

14  constitutional grounds.  (Dkt. # 15, Exhibit 4, page 1).  Mr. Sutton argued the court abused its

15  discretion in granting continuances and that his right to speedy trial had been violated.  (Dkt. # 15,

16  Exhibit 4).

17          The commissioner of the state court of appeals affirmed the conviction and sentence on April

18  20, 2005.  (Dkt # 15, Exhibit 5).  The commissioner specifically noted Mr. Sutton raised his issues as

19  federal claims.  (Dkt. # 15, Exhibit 5).  A motion to modify the ruling was denied on July 26, 2005.

20  (Dkt # 6).  Mr. Sutton did not seek review by the state supreme court.  Thus, no issues were

21  exhausted on direct appeal.

22          On February 3, 2006,  Mr. Sutton filed a personal restraint petition in the state supreme

23  court.  (Dkt. # 15, Exhibit 8).  He raised the following grounds for review:

24                                    First Ground

25          1.      I should be given a new sentence of 140 months, 12 months less confinement
                    as a result of my deadly weapon enhancement for my second degree assault
26                  conviction, because my jury's "special verdicts" on my two separate deadly
                    weapons enhancements for my convictions of first degree burglary (24
27                  months) and second degree assault (12 months) are in actuality "separate
                    convictions" arising out of the same criminal conduct (use of a deadly weapon

28

REPORT AND RECOMMENDATION
Page - 2

in the commission of what petitioner contends is actually only "one offense," notwithstanding the "antimerger statute," RCW 9A.52.050) which violates double jeopardy and/or is unconstitutional because, inter alia, not only is my second degree assault conviction actually an element of my first degree burglary which alone would justify eliminating my second degree assault conviction and/or its accompanying 12 month deadly weapon enhancement (which will be the subject of a different ground later), but also because absent "clear" legislative intent, my special deadly weapons verdicts in and of themselves, inter alia, required proof of a fact (use of deadly weapon) that the other "special deadly weapon verdict" required, and/or required proof of a fact (use of a deadly weapon) that either and/or both the first degree burglary and/or second degree assault [verdicts] required, and/or because there was only "one victim" involved, both of my two separate deadly weapons verdicts should have been considered by the trial court during sentencing as a single deadly weapon verdict, conviction, and/or enhancement under the "merger doctrine," and/or because there was no separate injury to the person or property of the "one victim" which was separate and distinct from and not merely incidental to use of the deadly weapon itself which the formed the "elements" of my "two special deadly weapons" verdicts, convictions, and/or enhancements, and/or either and/or both my first degree burglary and/or second degree assault [verdicts], it is clear that I did not use any unnecessary force that had a purpose or effect independent of the first degree burglary, second degree assault, and/or use of the deadly weapon, "especially" since the use of the deadly weapon was done in furtherance and/or in forward of the burglary and/or assault, and/or because there was only "one victim"and/or "one deadly weapon" involved both of my two separate weapons verdicts should have been considered by the trial court during sentencing as a single deadly weapon verdict, conviction, and/or enhancement under the "unit of prosecution doctrine", and/or because the legislature did not specify the proper "unit of prosecution" for alleged multiple violations of former RCW 9.94A.510(4), now RCW 9.94A.533(4), legislative intent cannot be discerned from the statutory language used or otherwise, and the "rule of lenity" therefore applies to have former RCW 9.94.510(4), now RCW 9.94A.533(4) "ambiguities" read in my favor that where only "one victim" and/or "one deadly weapon" are involved in a "single" and/ or "multiple" offense(s) committed situation, only one enhancement for a deadly weapon may be imposed.

## Second Ground

1.    I should be given relief from confinement by a vacation and/or reversal with prejudice of my second degree assault conviction and its accompanying deadly weapon enhancement of 12 months, and a new sentence of 140 months 12 months less confinement as a result of my deadly weapon enhancement for my second degree assault conviction, because, my convictions for first degree burglary and second degree assault as a result of the same act in the same incident, notwithstanding the "antimerger statute" RCW 9A.52.050, are unconstitutional and/or violate double jeopardy under the 5th and/or 14th Amendment(s) to the United States Constitution because my second degree assault conviction is actually an "element" of my first degree burglary conviction.

## Third Ground

1.    I should be given relief from confinement because my trial court

clearly erred in denying my motions to dismiss my case for speedy trial violations where multiple prejudicial and/or oppressive continuances were granted for the State to locate a witness when the State failed to exercise due diligence in securing the presence of the witness at trial, and the court's improperly granted continuances caused multiple prejudicial and/or oppressive continuances thereafter, which had resulted in my unnecessary, relatively lengthy, and oppressive incarceration at Pierce County Jail at least twice, and also prejudiced me because the prosecutor in my case had caused, requested, and/or repeatedly contributed to the multiple delays solely to gain several tactical advantages over me by, inter alia, seeking additional time to apprehend the alleged victim (Karen Ramirez) in order to secure dispositive testimony against me, denying me effective assistance of counsel where not only was I forced to choose between the exercise of two constitutional rights (effective assistance of counsel and the 6th Amendment right to a speedy trial, where I was forced to proceed to trial with a counsel who repeatedly conceded and/or complained on the record that he was unprepared to effectively represent me because of a lack of trial preparation time, i.e., interviewing and/or securing witnesses [such as Sean Dallas] and/or exculpatory evidence [such as the motel surveillance videotape]), but also where one of the primary reasons my trial counsel was unprepared to effectively represent me was because the delays themselves and my initial release from custody because of those delays, caused counsel that had been appointed to represent me to "stop investigating and/or preparing" for my case while I was on the street after having spent months apparently "wasting time" doing just that, where as upon my reincarceration my counsel was "reappointed just days" before my scheduled "jury impaneling" trial date.

### Fourth Ground

1.    I should be given a new trial or relief from confinement because my trial court clearly erred and unreasonably violated my right to due process when after the court itself noted that essential State witness Karen Ramirez had admitted to the court and everyone present that she was then "currently intoxicated" from significant cocaine use at the time of her examination as a witness for the State against petitioner, the court "utterly failed" to sua sponte stricken Ms. Ramirez's entire trial testimony and/or direct the jury to disregard Ms. Ramirez's entire testimony based on the fact that under Washington law pursuant to RCW 5.60.050(1), CrR 6.12(c) and/or State v. Hall, 46 Wn.App. 689, 691 n.1, 732 P.2d 524 (1987), a witness "intoxicated" at the time of their examination "shall" be deemed "incompetent" to testify.

### Fifth Ground

1.    I should be given a new trial or relief from confinement because my trial counsel was constitutionally ineffective for, inter alia, when after State witness and/or alleged victim, Karen Ramirez, admitted to heavy cocaine use just before her trial testimony – thus establishing Ms. Ramirez as an incompetent witness under RCW 5.60.050(1), CrR 6.12(c), and/or RCW 9A.04.100 (which provides that "[n]o person may be convicted of a crime unless each element of such crime is proved by competent evidence beyond a reasonable doubt."), my trial counsel utterly failed to move to strike Ms. Ramirez's testimony, to move for a mistrial, and/or move for a directed verdict of not

guilty, even <u>after</u> the trial court itself "acknowledged" Ms. Ramirez's shocking admission. Moreover, I was prejudiced by my trial counsel's failure to make <u>any</u> of the above mentioned motions because had he done so, the trial court would have been "obligated" by the mandatory language in the above authorities to grant any one of the motions, whereas without Ms. Ramirez's testimony, clearly there was much more than a reasonable probability that the results of my trial proceedings would have turned out differently.

### Sixth Ground

1.    I should be given a new trial or relief from confinement because the State violated my due process rights under <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose to me and/or my trial counsel, material impeachable evidence that State witness and/or alleged victim Karen Ramirez at and/or during the time of my trial was and/or worked as a confidential informant "CI #810" for the Lakewood Police Department in control drug buys and bust operations, that prejudiced me by, inter alia, depriving my jury with another more plausible reason why Ms. Ramirez would "fabricate" an assault by me upon her, probably as a result of her failure to secure a "control buy" from me at the Lakewood Police Department's probable request since I often refused to accept monies from her personally for drugs, and/or by depriving my trial counsel the opportunity to cross examine, confront, and/or impeach her "Ms. Ramirez" on my behalf when it was clear that Ms. Ramirez's testimony was essential to my conviction and/or crucial to the prosecution's case against me.

### Seventh Ground

1.    I should be given a new trial or relief from confinement because after patrol officer Montgomery P. Minion testified on cross and/or redirect examinations respectively that "[he] didn't ask to see a videotape" and that "[he had no] idea if the video cameras were even operating that night", "where they might have been pointed at" and/or even if "there were video cameras even in existence," the State failed to question patrol officer David Butts, produce and/or question any other patrol officers and/or detectives about and/or produce and/or turn over to the defense, the "material" potentially exculpatory motel video tape of the actual perpetrator kicking in the door to Rm 26 that State witness Donna Marie Saver, the motel manager on the evening in question, initially claimed she gave to one of the arriving patrol officers and/or later arriving detectives, which would have shown that I did not kick in the motel room door, thus establishing at least that I was not guilty of burglary, and/or that would have seriously questioned the validity of my remaining charges, especially considering the drug use and/or informant status of Ms. Ramirez and the selective contradictions and/or uncertainties of Ms. Shaver, and/or the fact that bad faith by State is evident since "some patrol officer and/or detective" undoubtedly knew it was their duty to retain all evidence and to turn over to the prosecutor's office the motel video tape Ms. Shaver claimed she gave to some patrol officer and/or detective.

### Eighth Ground

1.    I should be given a new trial or relief from confinement because my trial counsel was constitutionally ineffective because, inter alia, before and/or after patrol officer Montgomery P. Minion testified on cross and/or redirect examinations respectively that "[he] didn't ask to see a videotape" and that

"[he had no] idea if the video cameras were even operating that night", "where they might have been pointed at" and/or even if "there were video cameras even in existence," my trial counsel also failed to question patrol officer David butts, produce and/or question any other patrol officers and/or detectives <u>about</u> and/or <u>obtain</u> from the State, the "material" potentially exculpatory motel videotape of the actual perpetrator kicking in the door to Rm 26 that State witness Donna Marie Shaver, the motel manager on the evening in question, initially claimed she gave to one of the arriving patrol officers and/or later arriving detectives, which would have conclusively shown that I did not kick in the motel room door, thus establishing at the very least that I was not guilty of burglary, and/or would have seriously undermined the validity of my remaining charges, especially considering the drug use during trial and/or informant status of Ms. Ramirez and the selective, tailored, contradictory, and/or uncertain testimony of Ms. Shaver, and/or the fact that bad faith by the State is manifest since "some patrol officer and/or detective" undoubtedly knew it was their duty to retain all evidence and to turn over to the prosecutor's office the motel videotape Ms. Shaver claimed she gave to some patrol officer and/or detective that my trial counsel also should have made sure was and/or was not the case.

## Ninth Ground

1.    I should be given a new trial or relief from confinement because my trial court clearly erred and/or deprived me of my right to present a defense when the court refused to allow defense witness Shari Anne Horsley to testify to her personal knowledge that alleged victim and State witness Karen Ramirez had been severely beaten by a different male suspect just before, at, and/or near the time Ms. Ramirez claimed that I assaulted her and/or burglarized her motel room, whereas the trial court ruled that since Ms. Horsley and/or Ms. Ramirez according to Ms. Horsley "didn't even talk about the lacerations to the head (of Ms. Ramirez), which we know was a clearly visible injury", inter alia, that "to allow this witness to testify, there's got to be at least some rational connection to the March 27th allegation, and [this court] didn't hear it from [Ms. Horsley's] testimony", whereas my trial court's ultimate ruling prejudiced my by, inter alia, while acknowledging there was no <u>physical injury</u> "rational connection" from Ms. Horsley's proposed testimony alleging lacerations to Ms. Ramirez's head, the court apparently ignored the manifest <u>time of injury</u> "rational connection" from Ms. Horsley's proposed testimony alleging a severe assault on Ms. Ramirez by someone other than myself, that at a minimum would have allowed me to explain to my jury that Ms. Ramirez had "multiple enemies" looking to and/or did assault Ms. Ramirez just before, at, and/or near the time Ms. Ramirez claimed that I assaulted her and/or burglarized her motel room, and/or realizing the jury's natural tendency to attribute many if not all of Ms. Ramirez's <u>multiple physical manifest bruises and/or injuries</u> to me (her alleged boyfriend at the time) because of understandable "sympathy" for Ms. Ramirez, it was essential and/or critical for the trial court to have allowed me some means of demonstrating to my jury that someone other than me was at <u>least</u> responsible for the "other injuries" all to painfully apparent <u>all over Ms. Ramirez's body</u>, in addition to allowing me to "credibly argue" to my jury that someone other than me actually assaulted Ms. Ramirez and/or burglarized Ms. Ramirez's motel room, contrary to Ms. Ramirez's March 27th allegations, especially considering the drug use during trial and/or informant status of Ms. Ramirez and the selective, tailored, contradictory, and/or uncertain testimony of Ms. Shaver, and/or the motel videotape of the actual perpetrator Ms. Shaver claimed she gave to

some patrol officer and/or detective.

<u>Tenth Ground</u>

1.     I should be given a new trial, new sentence, and/or relief from confinement because the combined errors cited above in the previous nine grounds by themselves and/or any combination thereof had/has the cumulative and/or structural effect of depriving me due process of law and/or effective assistance of counsel, inter alia, as guaranteed by the 5th, 6th and/or 14th Amendments to the United States Constitution, by having a actual, substantial, and/or injurious effect and/or influence in determining the jury's verdict on my, inter alia, first degree burglary and/or second degree assault convictions, and/or at least my 12 month deadly weapon verdict.

(Dkt. # 15, exhibit 7).  Mr. Sutton's petition was transferred to the state court of appeals and was dismissed on September 29, 2006.  (Dkt. # 15, Exhibit 9). The state court of appeals held Mr. Sutton could not raise the issue relating to a speedy trial violation in his personal restraint petition because he had addressed that issue in his direct appeal and "he does not demonstrate that the ends of justice would be served by its reconsideration here."  (Dkt # 15, Exhibit 9, page 2).

Mr. Sutton moved for discretionary review and raised the ten issues from his petition.  (Dkt # 15, Exhibit 10).  Review was denied January 4, 2007, by the court commissioner.  (Dkt. # 15, Exhibit 11). Petitioner moved to modify that ruling and the motion to modify was denied March 6, 2007.  (Dkt. # 15, Exhibit 12).

This federal habeas corpus petition followed.  Petitioner raises the same ten ground for relief that were contained in his original personal restraint petition.  Respondent concedes the petition is timely and that all issues are exhausted.  The respondent contends the third issue is procedurally barred because it was not presented to the state supreme court on direct appeal and was presented in a posture that precluded review in Mr. Sutton's personal restraint petition.  (Dkt. # 14, pages 25 and 26).

<u>EVIDENTIARY HEARING</u>

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or there is (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and

convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996). Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

STANDARD

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 is explicit in that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1996). The Supreme Court has stated many times that federal habeas corpus relief does not lie for errors of state law. Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984); Estelle v. McGuire, 502 U.S. 62 (1991).

Further, a habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d).   A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

DISCUSSION

Grounds One and Two, sentencing issues.

The first two grounds challenge state sentencing decisions.  The state law allowed for two sentence enhancements, one for the burglary conviction and one for the assault conviction. Petitioner argues the weapon enhancements are the same criminal conduct and therefore should only be counted as one conviction.  He also argues his burglary and second degree assault are one

incident (Dkt. # 7, petition).

Respondent correctly notes that issues of state law are not subject to federal habeas review. Estelle v. McGuire, 502 U.S. 62 (1991). Here, petitioner is challenging the applications of the states sentence enhancement statute and the states anti-merger statute. Federal courts will not review alleged errors of state law. Christian v Rhode, 41 F.3d 461, 469 (9th Cir. 1994). These two claims are without merit and should be denied.

Ground Three, speedy trial.

Respondent argues this claim is procedurally barred. Petitioner raised the claim as a federal claim on direct review. (Dkt. # 15, Exhibit 4). The state court of appeals commissioner specifically noted the claim was brought under both the federal and state constitutions. (Dkt. # 15, exhibit 5). The claim was denied. Petitioner did not seek review of that decision in the state's highest court.

When petitioner tried to raise this issue in a collateral challenge, the state court of appeals and the state supreme court refused to address the claim on the merits. (Dkt. # 15, Exhibits 9 and 11).

Federal habeas corpus contains an exhaustion requirement. In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented to the state's highest court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985). A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of prisoners' federal rights. Duncan v. Henry, 513 U.S.364 (1995). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. Id, citing Picard v. Connor, 404 U.S. 270 (1971) and Anderson v. Harless, 459 U.S. 4 (1982).

Petitioner's direct appeal exhausted no issues as he did not file a timely motion for discretionary review. (Dkt. # 15 Exhibits 5 to 6). His subsequent attempt to raise his speedy trial claim was procedurally barred in state court as the issue was considered by the state court of appeals on direct appeal. (Dkt. # 15, Exhibit 5). The issue has not been exhausted.

Normally, a federal court faced with an unexhausted petition dismisses the petition without prejudice, so that the petitioner has an opportunity to exhaust the claims in state court. Now,

however, petitioner is barred from filing another petition in state court as any attempt to file another petition will be deemed successive and time barred.  <u>See</u>, RCW 10.73.090 and 10.73.140.  In such a case the court considers the claim exhausted but procedurally barred.

Federal Courts generally honor state procedural bars unless it would result in a "fundamental miscarriage of justice" or petitioner demonstrates cause and prejudice.   <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).  Petitioner here cannot show cause and prejudice in state court.

To show cause, petitioner must show that some objective factor external to the defense prevented petitioner from complying with state procedural rules relating to the presentation of his claims. <u>McCleskey v. Zant</u>, 499 U.S. 467, 493-94 (1991).  Here, petitioner simply failed to file a timely petition for discretionary review from his direct appeal.  Thus, petitioner cannot show cause that excuses his procedural default in state court.  Accordingly, this issue is procedurally defaulted and should not be considered.

<u>Ground Four, failure to strike the testimony of Karin Rameriz.</u>

During her direct examination Ms. Rameriz, the victim, testified that she smoked cocaine daily.  She testified she had smoked "an eight-ball" today.  Neither party made further inquiry on this point.  (Dkt. # 15, Exhibit 13, transcript page 118).  Ms. Rameriz also testified smoking the drug has a different affect on people and some people cannot function on the drug.  She testified she can smoke and "nobody knows it." (Dkt. # 15, Exhibit 13, transcript page 117).

After Ms. Ramirez testimony and out of presence of the jury the following dialog took place:

THE COURT:  Can I just make an inquiry, did I hear Miss Ramirez correctly last time she smoked crack cocaine was today?

MR. BLINN:  That's what I heard too.  And I thought it could mean a couple of things and I didn't want to go there.

THE COURT:  Is she in BTC?

MR. BLINN:  She's in drug court.

MR. RYAN:  She's in custody though, I did not want to go there, either. Smoked an Eight-Ball today, she said.

THE COURT:  Obviously a problem so – if she is in custody having access to crack cocaine, that's a large problem.  I thought she was in jail, if she's in between there and BTC–

MR. BLINN:  I don't think so.  I -- the other thing I thought it could maybe mean

REPORT AND RECOMMENDATION
Page - 10

1    she meant was: That on the day this incident happened, I had used and I had used the day before, but–

2    THE COURT:          I wasn't entirely sure of her context if she actually meant this day.

3    MR. RYAN:          I was kind of wondering.

4    THE COURT:          All right.  We will be at recess until 9:30 tomorrow morning....

5    (Dkt. # 15, Exhibit 13, page 151, transcript).

6    Petitioner argues his right to due process was violated and the court should have *sua sponte*

7    struck her testimony as she was intoxicated. Ms. Ramieriz at no time indicated she was intoxicated.

8    To the contrary, she indicated she is one of those people who can use cocaine and nobody knows it.

9    (Dkt. # 15, Exhibit 13, transcript page 117).   Further, counsel and the court were aware of the

10   content of her testimony.  From the dialog above, it is apparent they were not certain of its context,

11   did she mean today or did she mean the day of the incident.  No one questioned her ability to testify.

12   The state court of appeals considered this issue and held:

13       Sutton makes the additional argument that the trial court erred in allowing the
14       victim to testify despite her admission that she was intoxicated.  The victim
         stated on cross examination that she had used cocaine earlier that day, but she
15       neither admitted nor demonstrated that she was intoxicated.  Nor did the
         defense move to strike her testimony.  The record thus does not show the
16       victim was incompetent or that the trial court abused its discretion in allowing
         her to testify. *See State v. Smith*, 97 Wn.2d 801, 803 (1982)(competency of
17       witness is evidentiary issue reviewed for abuse of discretion).

18   (Dkt. # 15, Exhibit 9, page 2).  The state court has correctly identified the standard of review and

19   properly applied that standard to the facts.  The holding of the state court is not contrary to, and

20   does not involve an unreasonable application of, clearly established federal law, as determined by the

21   Supreme Court.  Nor does the state court ruling results in a decision based on an unreasonable

22   determination of the facts in light of the evidence presented to the state courts.  Petitioner is not

23   entitled to relief on this issue.

24   Ground Five, ineffective assistance of counsel.

25   Petitioner claims his attorney was ineffective for not moving to strike Karin Rameriz

26   testimony after she stated she had used cocaine.  As noted above, neither counsel nor the court were

27   sure of the context of Ms. Ramieriz statement.  (Dkt. # 15, Exhibit 13, page 151, transcript).

28   In order to establish ineffective assistance of counsel, a petitioner must show that counsel's

REPORT AND RECOMMENDATION
Page - 11

representation fell below an objective standard of reasonableness and that the deficient performance affected the result of the proceeding.  Strickland v. Washington, 466 U.S. 668, 686 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689.  In order to demonstrate prejudice, the defendant must show there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different.  Strickland, 466 U.S. at 694.

Under the first prong of the Strickland test, the question is whether counsel's assistance was reasonable under the totality of the circumstances, viewed as of the time of counsel's conduct. Strickland, 466 U.S. at 690.  To succeed under the first prong, the petitioner must show the attorney's conduct reflects a failure to exercise the skill, judgment, or diligence of a reasonably competent attorney.  United States v. Vincent, 758 F.2d 379, 381 (9th Cir.), cert. denied, 474 U.S. 838 (1985).

Under the second prong, the petitioner must demonstrate prejudice, that but for counsel's unprofessional errors, the result would have been different.  Strickland, 566 U.S. at 694.  However, sheer outcome determination is not sufficient to make out a Sixth Amendment violation; a proper prejudice inquiry focuses on whether counsel's errors or omissions rendered the proceeding fundamentally unfair or the result unreliable.  Lockhart v. Fretwell, 113 S.C. 838, 842-44 (1993).

Petitioner's claim fails on either prong.  He has not shown counsel's failure to move to strike Ms. Ramirez testimony was deficient.  The court and counsel were in the best position to consider if Ms. Ramieriz was impaired by possible drug use.  While the dialog shows they had concerns because of her testimony, her ability to testify was not in question and she did not show signs of impairment. Further, as there is no obvious impairment on the record, there is nothing to show a motion to strike would have been granted.

The state court of appeals considered this issue and held:

> Sutton makes the related argument that he received ineffective assistance of counsel when his attorney failed to move to strike the victim's testimony after she admitted to using cocaine.  As stated, there was nothing in the record to indicate that the victim was intoxicated or incompetent to testify. Sutton thus fails to show the necessary prejudice, as he fails to demonstrate that a motion to strike would have succeeded. *See State v.*

REPORT AND RECOMMENDATION
Page - 12

1

2

3

> *McFarland*, 127 Wn.2d 322, 334-35 (1995) (to show
> ineffective assistance of counsel, a defendant must show that
> his attorney's performance was deficient and that the deficiency
> was prejudicial).  His ineffective assistance of counsel
> argument therefore fails.

4

5

(Dkt. # 15, Exhibit 9, page 2 and 3). The holding of the state court is not contrary to, and does not

6

involve an unreasonable application of, clearly established federal law, as determined by the Supreme

7

Court.  Nor does the state court ruling results in a decision based on an unreasonable determination

8

of the facts in light of the evidence presented to the state courts.  Petitioner is not entitled to relief on

this issue.

9

      <u>Ground Six, alleged Brady violation for failure to disclose Ms. Rameriz as an informant</u>.

10

      Petitioner alleges the state withheld information that the victim was a confidential informant,

11

informant "CI 810."  He alleges this is a <u>Brady</u> violation.  <u>Brady v Maryland</u>, 373 U.S. 83 (1963).

12

The <u>Brady</u> holding is that the prosecution has a duty to disclose material exculpatory evidence to the

13

defense and has a related duty to preserve such evidence.  Petitioner fails to show Ms. Ramieriz is an

14

informant.  Further, he fails to show how that information would be exculpatory or have bearing on

15

this case.

16

      The state court noted Petitioner's argument was that this information would show her

17

connection to the "underworld of illegal drug sale and addiction."  (Dkt. # 15, Exhibit 9, Page 3).

18

Her connection to the drug world and her ability to buy illegal drugs was readily apparent from her

19

testimony and admission of drug use and illegal drug purchases.  (Dkt. # 15, Exhibit 13 transcript).

20

The holding of the state court is not contrary to, and does not involve an unreasonable application of,

21

clearly established federal law, as determined by the Supreme Court.  Nor does the state court ruling

22

results in a decision based on an unreasonable determination of the facts in light of the evidence

23

presented to the state courts.  Petitioner is not entitled to relief on this issue.

24

      <u>Ground Seven, Brady violation for failure to produce a video tape</u>.

25

      Petitioner alleges a video tape of the burglary from the hotel security cameras would show he

26

was not the person who committed the burglary.  Petitioner argues the tape was in the custody or

27

control of the police and failure to release the tape to him was a <u>Brady</u> violation.  The hotel manager

28

viewed the tape and without doubt identified petitioner as the person who kicked in the door to room

26 where Karin Rameriz was staying on March 27, 2003.  (Dkt # 15, Exhibit 13, page 92).

The hotel mangers testimony on re-direct addressed this issue:

| | |
|---|---|
| Q | Miss Shaver. |
| A | Yes. |
| Q | The police that took the tape, was that one of the two police officers that responded right– right after the incident happened? |
| A | Yes. |
| Q | And they took the tape that night. |
| A | I think they did. |
| Q | Are you sure? |
| A | Honestly, to be sure– to say I'm sure, honestly because you know, like I am– I am working seven days and two shifts a day. |
| Q | Sure. |
| A | So, I mean– you know, something like that happened, you know, I think the cops took the tape. |
| Q | Are you sure that the tape was ever taken at all? |
| A | Not for sure. |
| Q | Okay. Can you say for sure that it was one of the two cops that responded immediately? |
| A | No.  Like I said, I mean, I see a lot of people and a lot of cops everyday, so– |
| Q | How are those tapes stored? |
| A | Honestly, we use one tape and after it gets done, it rewinds and we just tape over it. If something like that happens, we automatically stop it. |
| Q | Did you automatically stop this tape? |
| A. | Yes. |
| Q | You did. Did you ever look at the tape? |
| A | I was in the – in the sitting room with the gentlemen who knew how to work the system. |
| Q | Did you ever see the tape yourself? |
| A | Yes. |
| Q | Were you able to see anything from room 26 on the tape? |
| A | I saw, you know, like someone, you know, kicking the door in. |
| Q | But you're– you can't even say for sure if the police took the tape. |
| A | Honestly, yes. I'm, you know, I am not sure. |
| Q | Okay. The tape wouldn't still be available. |
| A | No. |
| Q | And if the police did take the tape, you can't say for sure when they did. |
| A | No. |
| Q | And you can't say for sure if it was the two that responded that night or maybe another police officer at another time. |
| A | I couldn't say. |
| Q | Can you say for sure that you even remember seeing the tape and seeing someone kick in the door? |
| A | Yes. |
| Q | Who was the person that you saw on that tape kicking in the door? |
| A | That gentleman right there. |

(Dkt. # 15, Exhibit 13, pages 89 to 92, transcript).  On re-cross Miss Shaver was asked if she was

"hundred percent positive" petitioner was the person who kicked in the door.  She testified she was

positive.  (Dkt. # 15, Exhibit 13, page 93, transcript).

Petitioner fails to show that the prosecution ever had a tape of this incident or that the tape contains exculpatory evidence.  The holding of the state court is not contrary to, and does not involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Nor does the state court ruling results in a decision based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  Petitioner is not entitled to relief on this issue.

Ground Eight, ineffective assistance of counsel.

Petitioner claims his counsel was ineffective for not calling other police officers or obtaining the video tape.  Petitioner's argument was considered by the state court of appeals.  The court stated:

> Sutton makes the related argument that he received ineffective assistance of counsel when his attorney failed to obtain the tape or question both of the investigating officers about it.  There is no support for his claim that the tape existed at the time of trial.  The motel manager testified that she was not certain whether the police had taken it and added that if the tape had been left at the motel, it would have been reused.  In any event, there can be no showing of prejudice from counsel's failure to produce the tape or question additional witnesses about it since the evidence shows only that the tape was inculpatory.

(Dkt. #15, Exhibit 9, page 4).

Petitioner fails to show counsels performance was deficient and fails to show prejudice.  The court concurs with the state court on this issue.  This claim is without merit.

Ground Nine, exclusion of evidence, testimony of Shari Anne Horsley.

The court did not allow the testimony of defense witness Shari Anne Horsley, Mr. Sutton's cousin.  Ms. Horsley would have testified that she saw the victim, Karin Rameriz on March 27, 2003, after she was treated for the injuries she sustained at the motel.  Ms. Horsely would have testified that Ms. Rameriz was attacked by another person at some point in time after leaving the hospital on March 27, 2003.  The court allowed an offer of proof outside the presence of the jury.  (Dkt # 15, Exhibit 14, pages 169 to 180, transcript).  The court held her testimony was irrelevant to the assault that was the issue of this trial.

The state court of appeals addressed this issue and held:

> Sutton also argues that he was denied the right to present a defense when a defense witness was not allowed to testify that the victim's injuries were inflicted by

someone else.  In an offer of proof, the witness stated that she saw the victim after the date of the alleged assault by Sutton.  The victim allegedly said that someone had assaulted her and lifted up her shirt to show the bruises he had inflicted.  The witness also testified that she saw "this Mexican guy" beat the victim the same day.  On cross examination, she said she saw no injuries to the victim's face or head.

At trial the injuries were wounds to the victim's forehead and face that Sutton allegedly inflicted with a beer bottle.  The trial court found the proposed testimony irrelevant, as it failed to show that someone other than Sutton might have inflicted the lacerations to the victim's forehead and face and thus committed the assault charged.  This conclusion does not appear to have been an abuse of discretion, since there was no train of facts or circumstances that clearly pointed to someone other than Sutton as the guilty party, *See State v. Luvene*, 127 Wn2d 690 (1995); *State v Downs*, 168 Wn.664, 667 (1937).

(Dkt. # 15, Exhibit 9, page 4 and 5).

The Sixth Amendment compulsory process clause protects the criminal defendant's right to present testimony.  People of the Territory of Guam v. Palomo, 35 F.3d 368, 374 (9th Cir.1994), *cert. denied*, 513 U.S. 1089 (1995).  The Sixth Amendment compulsory process clause is subject to limitations designed to facilitate the orderly presentation of facts and evidence.  Taylor v. Illinois, 484 U.S. 400, 411 (1988).   In determining whether Sixth Amendment compulsory process rights have been violated we apply a balancing test, "weighing the interest of the defendant against the state interest in the evidentiary rule."  Perry v. Rushen, 713 F.2d 1447, 1450 (9th Cir.1983).  Petitioner must, however, present "unusually compelling circumstances . . . to outweigh the strong state interest in administration of its trials."  Id. at 1452.

Here, Mr. Sutton fails to show unusually compelling circumstances to find a compulsory process violation.  Mr. Sutton fails to show the testimony he wished to present was relevant to the injuries he was charged with inflicting on the victim.  This court finds no constitutional error in the state court's decision to exclude this evidence.  The holding of the state court is not contrary to, and does not involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Nor does the state court ruling results in a decision based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  Petitioner is not entitled to relief on this issue.

Ground Ten, cumulative error.

The state courts dismissed this claim as being without merit as no error was found (Dkt. # 15, Exhibit 9).  This court concurs.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court should deny this petition.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **November 16, 2007**, as noted in the caption.


DATED this 29 day of October, 2007.


/S/ *Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge